# Office of Disciplinary Counsel v. Buffington

Disciplinary Board Docket no. 45 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GENTILE, *Member*, June 22, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On March 23, 2004, Office of Disciplinary Counsel filed a petition for discipline against John V. Buffington, respondent. The petition charged respondent with multiple violations of the Rules of Professional Conduct for the unauthorized practice of law. Respondent filed an answer to petition on April 30, 2004.

A disciplinary hearing was held on September 21, 2004, before Hearing Committee 1.07 comprised of Chair Earl M. Forte, Esquire, and Members Lawrence A. Cabanel, Esquire and Patricia Furlong, Esquire. Respondent appeared pro se.

The committee filed a report on February 25, 2005, finding that respondent engaged in ethical misconduct and recommending that he be suspended for a period of six months.

Petitioner filed a brief on exceptions on March 14, 2005.

This matter was adjudicated by the Disciplinary Board at the meeting of May 18, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Office of Disciplinary Counsel, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said rules.

(2) Respondent, John V. Buffington, was born in 1947 and was admitted to practice law in the Commonwealth in 1979. He resides at 4730 Oakland St., Philadelphia PA 19124. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) In 1996 respondent applied to sit as an arbitrator in the Philadelphia Court of Common Pleas, pursuant to the Philadelphia Local Rules of Civil Procedure, by filling out and signing an application for initial certification as arbitration panelist, which included the following language:

"I hereby certify that I have been admitted to the bar of the court for one year, have tried at least one case in any forum in Pennsylvania, am currently engaged in the

active practice of law, and maintain my principal office in Philadelphia.

"If my status is changed in regard to any of the above, I will immediately contact the Court of Common Pleas, Arbitration Center, and ask that my name be removed from the certified list of arbitrators."

(5) By order of the Supreme Court of Pennsylvania dated July 22, 1999, respondent was transferred to inactive status effective August 21, 1999, for failure to comply with the Pennsylvania Rules for Continuing Legal Education (CLE) requirements.

(6) By certified letter dated July 22, 1999, signed for by respondent on July 24, 1999, Elaine M. Bixler, secretary of the board, forwarded to respondent a copy of that order, a notice from the CLE Board, copies of Pa.R.D.E. 217 and applicable Disciplinary Board Rules, forms for notice to clients and others, and statement of compliance.

(7) Respondent failed to file with the board a statement of compliance with Pa.R.D.E. 217.

(8) Respondent continued to practice law after his transfer to inactive status, including representation of clients, as follows:

(a) Louis Rodolico: correspondence concerning City of Philadelphia tax matter, 2001; real estate closing, 2003.

(b) Stacia Friedman: preparation and videotaping of execution of power of attorney for Celia Friedman, 2001; preparation and videotaping of execution of will for Celia Friedman, 2003; advice in related matter, 2002-2003; and

(c) Stephen E. Heyer: appearance in Chester County Domestic Relations Court, 2003; advice concerning IRS matter, 2003.

(9) Respondent failed to notify the Arbitration Center in Philadelphia County of his transfer to inactive status and consequent inability to serve as an arbitrator.

(10) Respondent continued to serve as an arbitrator several times a year after his transfer to inactive status and continuing through October 2003.

(11) Respondent continued to list himself as an attorney in telephone directories for each year that he was on inactive status, including the *Verizon White Pages* and the *Philadelphia Legal Directory,* continuing through the 2004 publication. His name was contained in a link on his wife's website, although that link was not extant at the time respondent was placed on inactive status.

(12) Although respondent took no affirmative steps to remove his listing from the *Verizon White Pages,* he did not take any action to renew or begin any form of advertising subsequent to his inactive status.

(13) In June 2002, respondent sent to the Disciplinary Board his PA Attorney's Annual Fee Form for 2002-2003 and his check in the amount of $175 for the fee.

(14) By letter dated June 28, 2002, Suzanne E. Price, Attorney Registrar, returned the check to respondent, notified him that the CLE Board had not certified his compliance with the CLE Board Rules and Regulations, and notified respondent that "[p]racticing law while on

inactive status violated the Rules of Professional Conduct."

(15) Respondent currently remains on inactive status. He is engaged in the business of managing real estate and has no present plans to return to the practice of law.

(16) Respondent explained his actions in the three legal matters listed above as follows:

(a) He acted as an attorney-in-fact at a real estate closing for the purchaser, Louis Rodolico, a long-term friend who was out of town and unable to attend the closing. Respondent brought a power-of-attorney to the closing and signed closing documents.

(b) He represented Stephen Heyer, his tenant and former divorce client, in a contempt proceeding for back support after Mr. Heyer came to him the day before the scheduled hearing in a "panic" and claimed financial difficulties.

(c) Stacia Friedman asked for respondent's assistance in the preparation of a power of attorney in connection with prior estate work he had performed for her. Ms. Freidman continued to seek respondent's advice concerning her mother based on respondent's experience caring for his mother-in-law who suffered from Alzheimer's disease.

(17) Respondent did not advise these three clients that he was unable to perform legal work for them due to his inactive status.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would violate the regulations of the profession in that jurisdiction.

(2) R.P.C. 7.1(a)—A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

(3) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(4) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(5) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules shall also be grounds for discipline; via

(6) Pa.R.D.E. 217(c)—A formerly admitted attorney shall promptly notify, or cause to be notified, of the transfer to inactive status, by registered or certified mail, return receipt requested, all persons or their agents or guardians to whom a fiduciary duty is or may be owed at any time after the transfer to inactive status, and all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or

she continues as an attorney in good standing. The responsibility of the formerly admitted attorney to provide the notice required by this subdivision shall continue for as long as the formerly admitted attorney is on inactive status.

(7) Pa.R.D.E. 217(d)—Orders imposing transfer to inactive status shall be effective 30 days after entry. The formerly admitted attorney, after entry of the transfer to inactive status order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature. During the period from the entry date of the order and its effective date, the formerly admitted attorney may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

(8) Pa.R.D.E. 217(e)—Within 10 days after the effective date of the transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing that the provisions of the order and these rules have been fully complied with; and all other state, federal and administrative jurisdictions to which such person is admitted to practice. Such statement shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed.

(9) Pa.R.D.E. 217(j)—A formerly admitted attorney may not engage in any form of law-related activities in this Commonwealth except in accordance with the following requirement: all law-related activities of the formerly admitted attorney shall be conducted under the

direct supervision of a member in good standing of the bar of this Commonwealth who shall be responsible for ensuring that the formerly admitted attorney complies with the requirements of this subdivision.

## IV. DISCUSSION

The facts of record in this matter support the conclusion that respondent engaged in the unauthorized practice of law while on inactive status. Respondent was transferred to inactive status effective August 21, 1999, for his failure to comply with his Continuing Legal Education requirements. Respondent was notified of that transfer and his related responsibilities. Despite his awareness of his inactive status, respondent failed to comply with the Enforcement Rules relating to termination of his practice and continued advertising his services in the *White Pages* and the *Philadelphia Legal Directory,* as well as on his wife's website.

Respondent also engaged in the practice of law with regard to several clients. He advised these clients, prepared documents, and represented a client in a matrimonial legal matter. Respondent's explanation of these matters indicates that he was helping either a long-term friend or former client who found themselves in a bind and requested his help. Clearly, respondent should have advised these persons of his inability to assist them, but it is somewhat understandable why he had trouble doing so. In the Louis Rodolico real estate closing, there is no clear evidence that respondent did act as a legal representative for his friend, rather than an attorney-in-fact.

Additionally, respondent served as an arbitrator in the Philadelphia Court of Common Pleas, despite the requirement that an attorney be on active status to do so. Although respondent signed a form acknowledging that he had to be an active attorney to sit as an arbitrator, and furthermore, that he was obligated to advise if his status changed, respondent continued his participation as an arbitrator when he was no longer eligible to serve in that capacity.

At the disciplinary hearing respondent admitted his violations and apologized for his misconduct. He terminated all legal matters and informed his clients and the Philadelphia Arbitration Center of his inactive status. Respondent has been practicing law since 1979 and has no prior history of discipline.

Because respondent ignored a Supreme Court order by failing to comply with regulations relating to the termination of his practice and by continuing to practice law, public discipline is required. The board and the court have considered the problematic issue of the unauthorized practice of law and the appropriate sanction to address such misconduct. More serious disciplinary sanctions have been reserved for those cases aggravated by other misconduct or where the attorney was prohibited from practice due to a prior suspension. *In re Anonymous Nos. 71 D.B. 99 and 126 D.B. 99,* 62 D.&C.4th 547 (2001) (respondent continued to practice after notice of transfer to inactive status for failure to pay annual fee, demonstrated lack of communication and competence in representing cli-

ent, and had a prior record of private discipline, suspended for two years). Sanctions are severe in matters where the unauthorized practice lasted for a long period of time. *Office of Disciplinary Counsel v. Forman,* 70 D.B. 2001, 799 Disciplinary Docket no. 3 (Pa. Jan. 31, 2003) (respondent practiced for 13 years while on inactive status, suspended for one year and one day).

The board's review of the instant case leads to the conclusion that respondent's actions fall within the lower ranges of misconduct and do not warrant a one year and one day suspension. Respondent engaged in very limited acts of legal representation for a short time frame while on inactive status. While it is true that he did not remove his name from the white pages, which number was also his home telephone number, he did not take affirmative steps to renew any advertising or to engage clients. His continued participation as an arbitrator was a prohibited activity, but there is no evidence that he used this participation to actively promote himself as a lawyer. Respondent showed understanding of his misconduct and remorse for it.

The board recommends that respondent be suspended for a period of six months, rather than a year and one day, as proposed by petitioner, which would require petitioning for reinstatement. The totality of the record does not suggest that respondent is an incompetent practitioner who must prove his character and fitness to practice law. This board feels satisfied that a six-month period of suspension will serve to impress upon respondent the abso-

lute necessity and importance of fulfilling the requirements essential to maintaining his professional license if he chooses to practice law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, John V. Buffington, be suspended from the practice of law for a period of six months.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Rudnitsky, Gephart and O'Connor dissented and would recommend a one year and one day suspension.

Board Members Raspanti and Nordenberg did not participate in the May 18, 2005 adjudication.

## ORDER

And now, September 20, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated June 22, 2005, it is hereby ordered that John V. Buffington be and he is suspended from the bar of this Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.